IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY MAYS and wife, | ) | |
| TERESA MAYS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | No. 05-1367-T/An |
| | ) | |
| INTERNATIONAL MILL SERVICES, | ) | |
| INC. and TUBE CITY IMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS

Plaintiffs Randy Mays and Teresa Mays filed this action in the Circuit Court of Madison County, Tennessee on November 1, 2005. The defendants, International Mill Services, Inc. ("IMSI") and Tube City IMS, Inc. ("Tube City"),[1] removed the action to this Court pursuant to 28 U.S.C. § 1441 *et seq.* on the basis of diversity of citizenship, 28 U.S.C. § 1332. In their complaint, plaintiffs assert causes of action under Tennessee law for retaliatory discharge, outrageous conduct/intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium. Plaintiffs also assert a statutory cause of action for racial discrimination under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* Plaintiffs seek both compensatory and punitive

---

[1] The original complaint identified the defendants as International Mill Services and Envirosource, Inc. In their answer to the complaint, defendants assert that those are fictitious names for International Mill Services, Inc. and Tube City IMS, Inc., respectively.

damages. On December 6, 2005, the defendants filed a motion to dismiss certain of the plaintiffs' claims. Pursuant to Local Rule 7.2(a)(2), a response was due on or before January 9, 2006.[2] However, plaintiffs have not responded to the motion and have not sought an extension of time to respond. Therefore, the motion is ripe for disposition.

The defendants first seek dismissal of Tube City from this action pursuant to Federal Rule of Civil Procedure 12(b)(2), based on a lack of personal jurisdiction. The plaintiffs have the burden of establishing that the Court has personal jurisdiction. See Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002); Nationwide Mut. Ins. Co. v. Trgy Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996); Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). However, when the Court's ruling on personal jurisdiction is made based on written submissions rather than an evidentiary hearing, the plaintiffs "need only make a prima facie showing of jurisdiction." Neogen Corp., 282 F.3d at 887 (quoting CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996)); see also Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). This requires the plaintiffs to establish "with reasonable particularity sufficient contacts between [Tube City] and the forum state to support jurisdiction." Neogen Corp., 282 F.3d at 887 (quoting Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)). Under these circumstances, the Court must consider the pleadings and affidavits in the light most favorable to the plaintiff, and "will not consider facts proffered by the defendant that conflict

---

[2] The Local Rule provides that a response to a motion to dismiss is due within thirty days. Federal Rule of Civil Procedure 6(e) provides that three days must be added for service, and under Rule 6(a), if the last day falls on a weekend, the document is due the next business day.

with those offered by the plaintiff." Neogen Corp., 282 F.2d at 887 (quoting Serras, 875 F.2d at 1214).

In a diversity action, the reach of a federal court's *in personam* jurisdiction is governed by the law of the state in which the court is located. Pickens v. Hess, 573 F.2d 380, 385 (6th Cir. 1978). The Tennessee "long-arm" statute, Tenn. Code Ann. § 20-2-214, permits Tennessee courts to exercise jurisdiction over non-residents to the full extent allowed by due process. J.I. Case Corp. v. Williams, 832 S.W.2d 530, 531 (Tenn. 1992). "Due process requires that a nonresident defendant be subjected to a judgment in personam only if he has such minimum contacts with the foreign state that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. at 532 (citing International Shoe Co. v. Washington, 326 U.S. 310 (1945)).

In judging a defendant's minimum contacts, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Even a single contact may provide a sufficient basis for jurisdiction if the contact creates a substantial connection with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18 (1985). Because the essence of the concept of minimum contacts is fair warning, a court must ascertain whether by virtue of the defendant's connection with the forum state, the defendant could "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 297 (1980).

In Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968), the Sixth

Circuit devised a three-part test[3] to determine whether a defendant has the requisite minimum contacts:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381; see also Neogen Corp., 282 F.3d at 889-90.

In the section of plaintiffs' complaint captioned "Jurisdiction and Venue" it is stated:

> This action arises under Tennessee tort law which establishes a Plaintiff's cause of action against a Defendant/former employer upon a showing by the Plaintiff that the Defendant's termination of the employment of the Plaintiff was substantially motivated by the Plaintiff's assertion of a claim for workers' compensation benefits under Tennessee law.

(Compl., ¶ 4.) The portions of the complaint setting out the factual allegations and causes of action contain references to plaintiff Randy Mays's employment with the defendants, plural.[4] However, there are no specific allegations identifying either of the defendants as plaintiff's employer, describing any relationship between the defendants, or setting forth any facts showing that Randy Mays could be considered an employee of both defendants. In the defendants' answer to the complaint, it is admitted Randy Mays was an employee of IMSI.

---

[3] The Tennessee Supreme Court has suggested that the Mohasco test is "too restrictive" and proposed a new five-part test. Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985). However, the Sixth Circuit has not recognized this new test, and continues to apply Mohasco. See, e.g., Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005); Neal v. Janssen, 270 F.3d 328, 332-33 (6th Cir. 2001); Payne v. Motorists' Mut. Inc. Companies, 4 F.3d 452, 455 (6th Cir. 1993); Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1090 (6th Cir. 1989).

[4] For example, "Plaintiff, Randy Mays, sustained injuries while in the course and scope of his employment with Defendants . . . ." (compl. ¶ 5), and "While employed by Defendants . . . ." (Compl. ¶ 7.)

4

(Answer, ¶¶ 5-7, 9-10, 16.) However, the defendants specifically deny that Randy Mays was employed by Tube City and assert that the Court lacks personal jurisdiction over Tube City. (Answer, p. 6, "Third Defense".)

Given the ambiguity of the complaint regarding the identity of Randy Mays's employer, Tube City's assertion that it did not employ Mays, and plaintiffs' failure to respond to the motion to dismiss, the Court finds that the plaintiffs have failed to establish with reasonable particularity that Tube City has sufficient contacts with Tennessee to satisfy the Southern Machine test and support the exercise of personal jurisdiction by the Court. Therefore, the motion to dismiss Tube City for lack of personal jurisdiction will be granted.

The defendants also move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of plaintiffs' causes of action for negligent infliction of emotional distress and for outrageous conduct/intentional infliction of emotional distress. In evaluating a motion to dismiss for failure to state a claim, the Court must construe the complaint in the light most favorable to the plaintiffs and accept all factual allegations as true. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A complaint should not be dismissed unless the Court determines that the plaintiffs can undoubtedly prove no set of facts in support of their claims that would entitle them to relief. Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 724 (6th Cir. 1996) (citing Conley, 355 U.S. at 45-46); Allard v. Weitzman (In re Delorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993).

Additionally, a complaint should not be dismissed because it does not state all the elements giving rise to a legal basis of recovery. Myers v. United States, 636 F.2d 166, 169

5

(6th Cir. 1981); Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784 (8th Cir. 1979). However, while "a complaint need not set down in detail all the particularities of a plaintiff's claim," the complaint must give the defendants fair notice of the claim and the grounds upon which it rests. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994). Although this standard is liberal, it requires the plaintiffs to plead more than bare legal conclusions. "In practice . . . a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." Allard, 991 F.2d at 1240 (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). Legal conclusions or unwarranted factual inferences need not be accepted as true. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

The complaint alleges that, during the course of his employment, Randy Mays's co-workers called him racially derogatory names, referred to him in a racially derogatory manner, and tried to provoke physical confrontations with him because he is a black man and his wife is white. Plaintiffs allege that the employer failed to take action to stop this harassment, causing Mays to suffer severe emotional and mental damage. Plaintiffs also allege that Mays's termination caused him severe emotional and mental damage. Plaintiffs allege that these actions constitute outrageous conduct/intentional infliction of emotional distress or, in the alternative, negligent infliction of emotional distress. (Compl. ¶¶ 16-18, 21-22.)

With regard to plaintiffs' claim for negligent infliction of emotional distress, IMSI contends that, as Randy Mays's former employer, it is immune from suit under the

exclusivity provision of the Tennessee Workers Compensation Law, Tenn. Code Ann. § 50-6-108(a), and relevant caselaw.  The statute provides:

> (a)  The rights and remedies granted to an employee subject to the Workers' Compensation Law, compiled in this chapter, on account of personal injury or death by accident . . . shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death.

This provision has been interpreted to bar tort claims against an employer that arise out of work-related injuries unless the employer committed an intentional tort against the employee. See Valencia v. Freeland and Lemm Constr. Co., 108 S.W.3d 239,  242-43 (Tenn. 2003); Scarborough v. Brown Group, Inc., 935 F. Supp. 954, 961 (W.D. Tenn. 1995) (citing Coffey v. Foamex L.P., 2 F.3d 157, 160 (6th Cir. 1993) and Blair v. Allied Maintenance Corp., 756 S.W.2d 267, 270 (Tenn. Ct. App. 1988)).  Plaintiffs' claim for negligent infliction of emotional distress, by definition, does not require a showing of intent to injure and is, therefore, barred by the exclusivity provision.

IMSI further contends that plaintiffs' cause of action for outrageous conduct/ intentional infliction of emotional distress fails to state a claim upon which relief may be granted.  Although the complaint purports to assert separate causes of action for outrageous conduct and intentional infliction of emotional distress, these are not two separate torts. Rather, the state-of-mind element of the tort of outrageous conduct requires plaintiffs to show that the conduct complained of was either intentional or reckless.  See Doe ex rel. Doe v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22 (Tenn. 2005).  Specifically, under Tennessee law, the elements of a claim outrageous conduct/infliction of emotional distress

7

are: (1) the conduct complained of must be intentional or reckless, (2) it must be so outrageous that it is not tolerated by a civilized society, and (3) it must result in serious mental injury. Id.; Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004).

The Tennessee courts have quoted approvingly from a passage in the Restatement (Second) of Torts, § 46 cmt. d:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

See, e.g., Miller v. Willbanks, 8 S.W.3d 607, 614 (Tenn. 1999); Dunn v. Moto Photo, Inc., 828 S.W.2d 747, 751 (Tenn. Ct. App. 1991). Therefore, the Tennessee courts have found claims for outrageous conduct actionable only in circumstances that are extreme. See, e.g., Dunn, 828 S.W.2d at 749 (photographs showing plaintiff in intimate poses and a state of partial undress were taken to be developed; developer kept one of the photos in a book and showed it to, and even loaned it to, other persons); Johnson v. Woman's Hosp., 527 S.W.2d 133, 135-36 (Tenn. Ct. App. 1975) (plaintiff's baby died at birth and she assumed hospital would properly dispose of the child's body; six weeks later, hospital personnel showed her the preserved body of the child, floating in a jar of formaldehyde).

Plaintiffs may ultimately prove that IMSI wrongfully discharged Randy Mays and/or

8

that he was subjected to discrimination. However, even when the factual allegations in the plaintiffs' complaint are taken as true, those allegations fail to meet the very high standard required to establish a cause of action for outrageous conduct in Tennessee and thus fail to state a claim upon which relief may be granted.

For the foregoing reasons, the defendants' motion to dismiss (dkt. #7) is GRANTED. Tube City IMS, Inc. is hereby DISMISSED from this action for lack of personal jurisdiction. Plaintiffs' claims for negligent infliction of emotional distress and for outrageous conduct/intentional infliction of emotional distress are also DISMISSED.

IT IS SO ORDERED.

                                       s/ **James D. Todd**
                                       JAMES D. TODD
                                       UNITED STATES DISTRICT JUDGE